# Exhibit 1

 **CT Corporation**

**Service of Process Transmittal**
12/02/2019
CT Log Number 536726633

| | |
|---|---|
| **TO:** | STACIE SIMPSON<br>PACE<br>100 AMERICAN METRO BLVD STE 108<br>HAMILTON, NJ 08619-2319 |
| **RE:** | **Process Served in Delaware** |
| **FOR:** | CertainTeed LLC  (Domestic State: DE) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Marilyn L. Biagetti, Pltf. vs. Certainteed, Lie, Dft. // To: CertainTeed LLC |
| **DOCUMENT(S) SERVED:** | SUMMONS, COMPLAINT, ATTACHMENT(S) |
| **COURT/AGENCY:** | Providence/Bristol Superior Court, RI<br>Case # PC201910890 |
| **NATURE OF ACTION:** | Asbestos Litigation - Personal Injury |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 12/02/2019 postmarked on 11/26/2019 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service of this Summons upon you |
| **ATTORNEY(S) / SENDER(S):** | John Deaton<br>The Deaton Law Firm<br>450 North Broadway<br>East Providence, RI 02914<br>(401)351-6400 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 12/02/2019, Expected Purge Date: 12/07/2019<br><br>Image SOP<br><br>Email Notification,  STACIE SIMPSON  paceservice@pace-claims.com<br><br>Email Notification,  Michael Starczewski  michael.t.starczewski@saint-gobain.com |
| **SIGNED:**<br>**ADDRESS:** | The Corporation Trust Company<br>1209 N Orange St<br>Wilmington, DE 19801-1120 |
| **For Questions:** | 866-401-8252<br>EastTeam2@wolterskluwer.com |

Page 1 of  1 / KR

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



CERTIFIED MAIL

7017 2620 0000 1856 2775

**DEATON LAW FIRM**
450 N BROADWAY
EAST PROVIDENCE, RI 02914
401-351-6400

US Postage
$07.75

Certainteed, LLC
The Corporation Trust Company
Corporation Trust Center
1209 Orange St.
Wilmington, DE 19801

# First Class Mail



STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPERIOR COURT

### SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>PC-2019-10890 |
| **Plaintiff**<br>Marilyn L. Biagetti<br>v.<br>**Defendant**<br>Certainteed, Llc | **Attorney for the Plaintiff or the Plaintiff**<br>John E Deaton |
| | **Address of the Plaintiff's Attorney or the Plaintiff**<br>450 NORTH BROADWAY<br>EAST PROVIDENCE RI 02914 |
| Licht Judicial Complex<br>Providence/Bristol County<br>250 Benefit Street<br>Providence RI 02903<br>(401) 222-3250 | **Address of the Defendant**<br>Certainteed, LLC<br>The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange St.<br>Wilmington, DE 19801 |

**TO THE DEFENDANT, Certainteed, LLC:**

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 11/13/2019. | /s/ Henry Kinch<br>Clerk |

Witness the seal/watermark of the Superior Court

SC-CMS-1 (revised July 2014)



STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPERIOR COURT

| Plaintiff<br>Marilyn L. Biagetti<br>v.<br>Defendant<br>Certainteed, Llc | Civil Action File Number<br>PC-2019-10890 |
| --- | --- |

### PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, Certainteed, LLC, by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person of suitable age and discretion _____

Address of dwelling house or usual place of abode _____

Age _____

Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.

Name of authorized agent _____

If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

☐ With a guardian or conservator of the Defendant.

Name of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.

Name of person and designation _____

Page 1 of 2

SC-CMS-1 (revised July 2014)

d in Providence/Bristol County Superior Court
omitted: 11/12/2019 7:05 PM
velope: 2339816
Viewer: Bob Q

**STATE OF RHODE ISLAND**                    :        **SUPERIOR COURT**
**PROVIDENCE**                               :
                                             :
IN RE: RHODE ISLAND                          :
ASBESTOS LITIGATION                          :
                                             :
MARILYN L. BIAGETTI AND                      :
ROGER BIAGETTI                               :        **Case Number:**
*Plaintiffs,*                                :
                                             :
                                             :
v.                                           :
                                             :
**CERTAINTEED, LLC**                         :        **November 12, 2019**
**DBMP LLC.,**                               :
        *Defendants.*                        :

## COMPLAINT

1. Plaintiff, Marilyn L. Biagetti ("Plaintiff") and her husband, Roger Biagetti, are hereinafter collectively referred to as "the Plaintiffs."

2. Each of the Defendants named in the caption above have conducted business in the state of Rhode Island and have produced, manufactured or distributed asbestos and/or asbestos-containing products with the reasonable expectation that such products would be used or consumed in this state, the Defendants' products were so used or consumed in this state, and the Defendants committed the tortious acts set forth below in this state.

## FIRST COUNT
**(Failure to Warn)**

3. Paragraphs 1 and 2 are incorporate herein as if set forth in full.

4. The Plaintiff was exposed to various asbestos-containing products. Such asbestos exposure contributed in part or totally to the Plaintiff's contraction of asbestos-related mesothelioma and other asbestos-related pathologies.

1

id in Providence/Bristol County Superior Court
omitted: 11/12/2019 7:05 PM
/elope: 2339616
/iewer: Bob Q

5.      The Plaintiff was exposed to various asbestos containing products directly and secondarily. Such direct and secondary exposure to asbestos contributed in part or totally to the Plaintiff's contraction of asbestos-related mesothelioma and other asbestos-related pathologies.

6.      The Plaintiff was exposed to and did inhale and/or ingest asbestos dust, fibers, and particles that came from the asbestos products and asbestos containing talc that were contracted for, mined, milled, processed, manufactured, designed, tested, assembled, fashioned, fabricated, packaged, supplied, distributed, delivered, marketed and/or sold by the Defendants.

7.      Upon information and belief, the Defendants, through their agents and employees, mined, processed, manufactured, designed, tested and/or packaged various asbestos-containing products, and supplied, distributed, delivered, marketed and/or sold said asbestos-containing products to the employer(s) of the Plaintiff, or to others working at the various jobsites where the Plaintiff was employed, or to third persons who, in turn, delivered and sold such products and materials to such employers or to others working at such jobsites for use by employees, including the Plaintiff, or others through which the Plaintiff was subject to secondary exposure.

8.      Plaintiff was exposed to asbestos materials and products which, as part of her living and employment, she was forced to come into contact with, breathe, inhale, and ingest asbestos fibers and particles coming from said asbestos products and materials and asbestos containing talc.

9.      At all times pertinent hereto, Defendants were engaged in the business of contracting for, mining, milling, processing, manufacturing, designing, testing, assembling, fashioning,

d in Providence/Bristol County Superior Court
omitted: 11/12/2019 7:05 PM
/elope: 2339616
/iewer: Bob Q

fabricating, packaging, supplying, distributing, delivering, marketing, and/or selling asbestos and asbestos products.

10.     At all times pertinent hereto, the asbestos products and asbestos containing talc contracted for, mined, milled, processed, manufactured, designed, tested, assembled, fashioned, fabricated, packaged, supplied, distributed, delivered, marketed, and/or sold by the Defendants reached the Plaintiff without any substantial change in their condition from the time they were sold.

11.     The foregoing asbestos products and asbestos containing talc were defective in one or more of the following ways:

    (a)     In that they were inherently dangerous to those who used, handled, came in contact with and/or inhaled said products and materials;

    (b)     in that they failed to carry proper, adequate and correct warnings and information concerning the dangers of the said products;

    (c)     in that they lacked proper safety precautions to be observed by users, handlers and persons, including the Plaintiff who would reasonably and foreseeably come into contact with the said products and materials;

    (d)     in that they were packaged, bagged, boxed and/or supplied to the Plaintiffs in packaging, bagging, boxes or other containers that were inadequate and/or improper;

    (e)     in that the products were delivered to and reached the Plaintiff without adequate or proper handling instructions, face masks and/or respirators;

    (f)     in that any warnings, information and/or safety instructions said products may have carried were improper and inadequate in that they failed to adequately and

d In Providence/Bristol County Superior Court
omitted: 11/12/2019 7:05 PM
elope: 2339616
iewer: Bob Q

reasonably apprise users, handlers and persons, including the Plaintiff, coming

into contact with said products and materials, of the full scope and danger to their

health and risks, including the risk of cancer, when coming into contact with

asbestos products, asbestos materials and asbestos containing talc;

(g)     in that the said asbestos products, asbestos materials and asbestos containing talc

were not of merchantable quality;

(h)     in that the said asbestos products, asbestos materials and asbestos containing talc

were not fit and safe for their known and intended purposes and uses.

12.     As a result of the above, the Plaintiff was caused to sustain severe, painful and permanent

injuries such as described in Paragraphs 4 and 5 caused by Plaintiff coming into contact

with, breathing, inhaling and ingesting asbestos fibers.  The injuries and diseases from

which the Plaintiff is suffering will continue to cause the Plaintiff to suffer great pain,

suffering, mental anxiety, mental distress and anguish, humiliation, emotional trauma,

and likely result in her death.

13.     The disease, diseases or injuries from which the Plaintiff suffers were directly and

proximately caused by Plaintiff's exposure to asbestos, asbestos products and asbestos

containing talc which were mined, milled, manufactured, designed, assembled,

fabricated, supplied, constructed, processed, packaged, distributed, delivered, purchased

and/or sold by the Defendants.

14.     As a result thereof, the Plaintiff's lifespan has been shortened and her capacity to carry on

activities of daily living has been impaired along with the Plaintiff's capacity to enjoy life

and family, to engage in any gainful employment, and to participate in civic affairs.

Case 1:19-cv-00661-WES-LDA   Document 1-1   Filed 12/23/19   Page 10 of 37 PageID #: 17
d in Providence/Bristol County Superior Court
omitted: 11/12/2019 7:05 PM
relope: 2339616
viewer: Bob Q

15.     As a result of said illness, the Plaintiff has been obligated to incur expenses for medical, hospital and surgical treatment, drugs, medicines, x-rays and medical apparatuses, and in the future will be obliged to incur further expenses for such purposes.

16.     As a further result of said illness, the Plaintiff's earning capacity has been impaired and will be impaired in the future.

17.     The Defendants knew or should have known that the asbestos products, asbestos materials and asbestos containing talc were inherently dangerous to those who used, handled or came in contact with said products and materials.

18.     The Defendants failed to provide proper, adequate and correct warnings and information concerning the dangers of the products and materials to persons using, handling, or coming into contact therewith.

19.     The Defendants failed to provide proper, adequate and correct warnings and instruction of safety precautions to be observed by users, handlers and persons, including the Plaintiff, who would reasonably and foreseeably come into contact with the said products and materials.

20.     Any warnings, information and/or instructions of safety precautions were improper and inadequate in that, among other things, they failed to adequately and reasonably apprise users, handlers and persons coming into contact with the said products and materials, including the Plaintiff, of the full scope and danger to their health of contact with asbestos products, materials and asbestos containing talc, including the risk of cancer.

21.     The Defendants have been possessed of medical and scientific data, studies and reports since approximately 1929, which information clearly indicated that asbestos and

5

:d in Providence/Bristol County Superior Court
:mitted: 11/12/2019 7:05 PM
'elope: 2339616
/iewer: Bob Q

asbestos-containing products were hazardous to the health and safety of the Plaintiff and other human beings.

22. The Defendants, during the 1930's, 1940's, 1950's and 1960's became possessed of voluminous medical and scientific data, studies and reports, which information conclusively established that asbestos and asbestos-containing products were hazardous to the health and safety of the Plaintiff and all humans exposed to the products.

23. The Defendants had numerous workers' compensation claims filed against them by former asbestos workers/employees, since the 1930's.

24. The Defendants have consistently failed to acknowledge, publish, or in any way advise others of studies and reports known throughout the industry, including studies conducted by or on behalf of various Defendants in the asbestos industry, since the 1920's.

25. Notwithstanding that the Defendants possessed the foregoing information, the Defendants wrongfully contracted for, mined, milled, processed, manufactured, designed, tested, assembled, fashioned, fabricated, packaged, supplied, distributed, delivered, marketed, and sold asbestos products, asbestos materials and asbestos containing talc to the Plaintiff, the Plaintiff's employer(s) and/or to others working at the various jobsites and places of employment of the Plaintiff and the Defendants failed to render proper, adequate and correct warnings, advice, instruction and information and so acted in a grossly negligent, malicious, willful and wanton manner, and failed to use reasonable care under all circumstances, and wrongfully acted in other respects.

26. It was the continuing duty of the Defendants to advise and warn purchasers, consumers, and users, and all prior purchasers, consumers, and users, of all dangers, characteristics,

6

d in Providence/Bristol County Superior Court
omitted: 11/12/2019 7:05 PM
velope: 2339616
viewer: Bob Q

potentialities and/or defects discovered subsequent to their initial marketing or sale of said asbestos and asbestos products.

27.   The Defendants breached these duties by:

(a)   failing to warn the Plaintiff of the dangers, characteristics, and/or potentialities of the product or products when they knew or should have known that the exposure to the product(s) would cause disease and injury;

(b)   failing to warn the Plaintiff of the dangers to which the Plaintiff was exposed when they knew or should have known of the dangers;

(c)   failing to exercise reasonable care to warn the Plaintiff of what would be safe, sufficient, and properly protective clothing, equipment, and appliances when working with, near or during exposure to asbestos and asbestos products;

(d)   in that they were packaged, bagged, boxed and/or supplied to the Plaintiff in packaging, bagging, boxes or other containers that were inadequate and/or improper;

(e)   in that the products were delivered to and reached the Plaintiff without adequate or proper handling instructions, face masks and/or respirators;

(f)   failing to test the asbestos, asbestos products and asbestos containing talc in order to ascertain the extent of dangers involved upon exposure;

(g)   failing to conduct such research that should have been conducted in the exercise of reasonable care in order to ascertain the dangers involved upon exposure;

(h)   failing to remove the product or products from the market when the defendant corporations knew or should have known of the hazards of exposure to asbestos and asbestos products;

7

:d in Providence/Bristol County Superior Court
>mitted: 11/12/2019 7:05 PM
velope: 2339616
/iewer: Bob Q

    (i)     failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos to adequately warn and apprise the Plaintiff of the dangers, hazards, and potentialities discovered;

    (j)     generally using unreasonable, careless, and negligent conduct in the contracting for, mining, milling processing, manufacturing, designing, testing, assembling, fashioning, fabricating, packaging, supplying, distributing, delivering, marketing, and/or selling of their asbestos and asbestos products.

WHEREFORE, the Plaintiffs claim damages.

## SECOND COUNT
### (Negligence)

28.    Paragraphs 1 through 27 are incorporated herein as if set forth in full.

29.    The Plaintiff was a foreseeable user and consumer of the Defendants' asbestos and asbestos products.

30.    The Defendants owed the Plaintiff a duty of reasonable care to avoid causing him harm from exposure to their products.

31.    The Defendants breached their duty in the numerous and various manner set forth above.

32.    The Defendants' negligence directly and proximately caused the Plaintiff's asbestos disease and other lawful damages set forth above.

WHEREFORE, the Plaintiffs claim damages.

## THIRD COUNT
### (Strict Product Liability)

33.    Paragraphs 1 through 32 are incorporated herein as if set forth in full.

34.    The foregoing acts of the Defendants were wrongful as to the Plaintiff within the intendment of Restatement, Torts 2d section 402A.

8

:d in Providence/Bristol County Superior Court
omitted: 11/12/2019 7:05 PM
relope: 2339616
/iewer: Bob Q

WHEREFORE, the Plaintiffs claim damages.

## FOURTH COUNT
### (Breach of Warranty)

35.    Paragraphs 1 through 34 are incorporated herein as if set forth in full.

36.    The Defendants expressly and/or impliedly warranted that said asbestos materials and products were of merchantable quality, fit and safe for the purposes for which they were contracted for, mined, milled, processed, manufactured, designed, tested, assembled, fashioned, fabricated, packaged, supplied, distributed, delivered, marketed, sold, intended and used, as set out in their sales brochures, manuals and written warranties accompanying or preceding sales and distribution of their products, and in various other manners.

37.    The Defendants breached said warranties in that said asbestos materials and products were not of merchantable quality, fit and safe for the purposes for which they were contracted for, mined, milled, processed, manufactured, designed, tested, assembled, fashioned, fabricated, packaged, supplied, distributed, delivered, marketed, sold, intended and used in that, among other things, adequate warning precautions and instructions were not provided to users, handlers, and persons coming into contact with said products and materials.

38.    The Plaintiff's injuries and resulting damages set forth above were caused by breach of said warranties by the Defendants.

39.    The Plaintiff was employed and lived in capacities which placed Plaintiff in close proximity with asbestos and asbestos-related materials, manufactured and/or distributed by one or more of the Defendants. Plaintiff's presence was known or should have been known to each of the Defendants.

9

:d in Providence/Bristol County Superior Court
:mitted: 11/12/2019 7:05 PM
/elope: 2339616
/iewer: Bob Q

WHEREFORE, the Plaintiffs claim damages.

## FIFTH COUNT
### (Conspiracy)

40.  As against Defendant Metropolitan Life Insurance Company (hereinafter "Met Life") only.

41.  Plaintiff's repeat and restate all allegations contained in all paragraphs above as if fully set
forth herein.

42.  Defendant, individually and as agents of one another and as co-conspirators, aided, abetted,
encouraged, counseled, assisted, agreed, and conspired among themselves and with other
asbestos manufacturers and distributors to injure Plaintiffs.

43.  The Defendants knew that the others' conduct constituted a breach of duty and gave
substantial assistance or encouragement to the other so to conduct itself.

44.  The Defendants acted in the following fashion:

   (a)   Defendant Met Life Insurance Company required a tangible quid pro quo from
McGill University in the 1920's in exchange for providing funding for a study of
asbestos disease in Canadian miners. The study revealed asbestos miners suffered
from asbestosis. The study was never published and agents of Met Life materially
misrepresented in the published literature this known fact.

   (b)   In 1932, Met Life, through its agents Dr. Anthony Lanza, Dr. Fellows, and others,
assisted co-conspirator Johns-Manville Corporation with medical examinations of
more than 1,000 employees of Johns-Manville's factory in Manville, New Jersey.
The report of this study showed that a large percentage of the employees suffered
from asbestosis, including employees not directly involved in the manufacturing
process. This 1932 medical survey was not published in the medical literature and
therefore was unavailable to scientists studying the issues of asbestos disease.

Further collaboration between the conspiring asbestos producers and Met Life
officials continued this trend of intentional cover-up.

(c)     Beginning in approximately 1934, conspirator Johns-Manville Corporation, through
        its agents, Vandiver Brown and Attorney J.C. Hobart, and conspirator Raybestos-
        Manhattan, through its agents, Sumner Simpson and J. Rohrbach, suggested to Dr.
        Lanza, Associate Medical Director of Met Life (insurer of conspirators Johns-
        Manville, Raybestos, and others) that Dr. Lanza publish a study on asbestosis in
        which Dr. Lanza would affirmatively misrepresent a material fact about asbestos
        exposure i.e., the seriousness of the disease process, asbestosis. This was
        accomplished through intentional deletion of Dr. Lanza's description of asbestosis
        as "fatal" and through other selective editing at the behest of the Defendants and
        their co-conspirators that affirmatively misrepresented asbestos as a disease process
        as being less serious than it actually is and was known to be then. As a result, Dr.
        Lanza's study was published in the medical literature in this misleading fashion in
        1935. Defendant Met Life was motivated, in part, to effectuate this fraudulent
        misrepresentation and fraudulent nondisclosure by the desire to influence proposed
        legislation to regulate asbestos exposure and to provide a defense in lawsuits and
        workers' compensation claims involving Manville, Raybestos, Met Life, and others.

(d)     In 1936, conspirators American Brake Block Corporation, Asbestos Manufacturing
        Company, Gatke Corporation, Johns-Manville Corporation, Keasby & Mattison
        Company (then an alter-ego to defendant Turner & Newall), Raybestos-Manhattan,
        Russell Manufacturing, Union Asbestos & Rubber Company, and defendant United
        States Gypsum Company, entered into an agreement with the Saranac Laboratories.

11

id in Providence/Bristol County Superior Court
mitted: 11/12/2019 7:05 PM
elope: 2339616
iewer: Bob Q

Under this agreement, these companies acquired the power to decide what
information Saranac Laboratories could publish about asbestos disease and control
what form such publications were to occur. This agreement gave these conspirators
power to affirmatively misrepresent the results of the work at Saranac, and also
gave these conspirators power to suppress material facts included in any study. On
numerous occasions thereafter, the conspirators exercised their power to prevent
Saranac scientists from disclosing material scientific data resulting in numerous
misstatements of fact being made at scientific meetings.

(e)     On November 11, 1948, representatives of the following conspirators met at the
headquarters of Johns-Manville Corporation: American Brake Block Division of
American Brake and Shoe foundry, Gatke Corporation, Keasby & Mattison
Company (then an alter-ego to defendant Turner & Newall), Raybestos-Manhattan,
Inc., Thermoid Company, Union Asbestos and Rubber Company, and defendant
U.S. Gypsum Company (hereafter U.S. Gypsum). U.S. Gypsum did not send a
representative to the meeting, but instead authorized Vandiver Brown of Johns-
Manville to represent its interest at the meeting and to take action on its behalf.

(f)     At this November 11, 1948 meeting, these Defendants, co-conspirators and their
respective representative decided to exert their influence to materially alter and
misrepresent material facts about the substance of research started by Dr. Leroy
Gardner at the Saranac Laboratories beginning in 1936. Dr. Gardner's research
involved the carcinogenicity of asbestos in mice and also included an evaluation of
the health effects of asbestos on humans with a critical review of the then-existing
standards of dust exposure for asbestos and asbestos-containing products.

12

d in Providence/Bristol County Superior Court
omitted: 11/12/2019 7:05 PM
velope: 2339616
/iewer: Bob Q

(g)     At this meeting, the Defendants and their co-conspirators intentionally and
affirmatively determined that Dr. Gardner's work should be edited to specifically
delete material facts about the cancer-causing propensity of asbestos and the health
effects of asbestos on humans and the critique of the dust standards and then
published in the medical literature as edited by Dr. Arthur Vorwald.  The acts of
these conspirators were carried out by co-conspirator defendant Met Life's agent,
Dr. Lanza.  The Defendants and co-conspirators thereby fraudulently
misrepresented the risks of asbestos exposure to the public, in general, and the class
of persons exposed to asbestos, including Plaintiffs.

(h)     As a direct result of influence exerted by the above-described conspirators, Dr.
Vorwald published Dr. Gardner's edited work in January, 1951, in the <u>Archives of
Industrial Hygiene and Occupational Medicine</u> (Vol. 3, No. 1), a journal of the
American Medical Association.  The published version stressed those portions of
Gardner's work that the conspirators wished stressed, but omitted references to
cancer, to human asbestosis, and to the inadequacy of the then-established threshold
limit values (hereinafter "TLVs").  Furthermore, that article made a false claim that
the published report was the "complete survey" of Dr. Gardner's work.  The
Defendants thereby fraudulently, affirmatively, and deliberately disseminated this
misleading publication to university libraries, government officials, medical
doctors, agencies, the public, and others.

(i)     Such action constituted a material affirmative misrepresentation of the total context
of material facts involved in Dr. Gardner's work and resulted in creating an

13

appearance that inhalation of asbestos was less of a health problem than Dr.
Gardner's unedited work indicated.

(j)     The following conspirators and others were members of the trade association
known as Quebec Asbestos Mining Association (Q.A.M.A.): Johns-Manville
Corporation, Carey-Canada (individually and as successor to Quebec Asbestos
Corporation), the Celotex Corporation (successor to Quebec Asbestos Corporation),
defendant Asbestos Claims Management Corporation (f/k/a National Gypsum), and
defendant Turner & Newall (individually and successor to Bell asbestos).  The
members of Q.A.M.A. participated in the above-described misrepresentation of the
work of Dr. Gardner published by Dr. Vorwald in the AMA Archives of Industrial
Health in 1951. Evidence of the Q.A.M.A.'s involvement in this misrepresentation
arises from co-conspirator Johns-Manville's membership in the Q.A.M.A., as well
as correspondence from co-conspirators indicating close monitoring of the editing
process by Q.A.M.A.'s representative, Ivan Sabourin, acting on behalf of all
Q.A.M.A.'s members.

(k)     Defendants who were members of the Q.A.M.A., began on or about 1950 to
formulate a plan to influence public opinion about the relationship between asbestos
and cancer by influencing the medical literature on this subject and then touting and
disseminating this literature to the public and to organizations and legislative bodies
responsible for regulatory control of asbestos with the specific intent of
misrepresenting the existing scientific information and suppressing contrary
scientific data in their possession and control.

14

id in Providence/Bristol County Superior Court
omitted: 11/12/2019 7:05 PM
velope: 2339616
viewer: Bob Q

(l)     This plan of misrepresentation and influence over the medical literature began in or
        about 1950 when Q.A.M.A. members selected Saranac Laboratories to do an
        evaluation of whether cancer was related to asbestos. After a preliminary report
        authored by Dr. Vorwald in 1952 indicated that a cancer/asbestos relationship
        might exist in experimental animals, the Q.A.M.A. members refused to further fund
        the study and it was terminated and never publicly discussed.

(m)     As a result of the termination of this study, these Defendants fraudulently withheld
        information from the public and affirmatively misrepresented to the public and
        responsible legislative and regulatory bodies that asbestos did not cause cancer,
        including affirmative misrepresentations by conspirators' agents Kenneth W. Smith,
        M.D., Paul Cartier, M.D., Arthur J. Vorwald, M.D., Anthony J. Lanza, M.D.,
        Vandiver Brown, and Ivan Sabourin, said misrepresentations being directed to, inter
        alia, United States Government officials, Canadian government officials, U.S.
        National Cancer Institute, other medical organizations, and the general public,
        including Plaintiffs.

(n)     Subsequently, the Q.A.M.A. defendant conspirators contracted with the Industrial
        Hygiene Foundation (I.H.F.) and Dr. Daniel Braun to further study the relationship
        between asbestos exposure, asbestosis and lung cancer. In 1957, Drs. Braun and
        Truan reported to the Q.A.M.A. that asbestosis did increase a worker's chances of
        incurring lung cancer.

(o)     The Q.A.M.A. Defendants thereafter caused, in 1958, a publication of the work by
        Drs. Braun and Truan in which the findings regarding increased incidence of cancer
        in persons with asbestosis was edited out by agents of the Q.A.M.A. The published

id in Providence/Bristol County Superior Court
omitted: 11/12/2019 7:05 PM
/elope: 2339616
/iewer: Bob Q

version of this study contained a conclusion that asbestos exposure did not increase

the incidence of lung cancer, a conclusion known by the defendant conspirators to

be patently false.

(p)    By falsifying and causing publication of studies concluding that asbestos exposure

did not cause lung cancer and simultaneously omitting a documented finding that

asbestosis did increase the risk of lung cancer, the Q.A.M.A. Defendants

affirmatively misrepresented to the public and concealed from the public the extent

of risks associated with inhaling asbestos fibers.

(q)    In approximately 1958, the Q.A.M.A. Defendants publicized the edited works of

Drs. Braun and Truan at a symposium in an effort to fraudulently misrepresent to

the public and persons exposed to asbestos that the inhalation of asbestos dust

would not cause cancer.

(r)    The fraudulent misrepresentations beginning in 1946, as elaborated above and

continuing with the publication of the 1958 Braun/Truan study, influenced the

standards set for the Threshold Limit Value (TLV), and inhibited the lowering of

the TLV value due to the cancer risk associated with asbestos inhalation.

(s)    In 1967, Q.A.M.A. Defendants determined at their trade association meeting that

they would intentionally mislead consumers about the extent of risks involved in

inhalation of asbestos products.

(t)    In 1952, a symposium regarding the health effects of asbestos was held at Saranac

Laboratories. The following conspirators were in attendance: Johns-Manville,

Turner & Newall, Raybestos-Manhattan, and Q.A.M.A. members by way of their

agents, Cartier, Sabourin, and LeChance.

Case 1:19-cv-00661-WES-LDA   Document 1-1   Filed 12/23/19   Page 22 of 37 PageID #: 29
d in Providence Bristol County Superior Court
omitted: 11/12/2019 7:05 PM
velope: 2339616
viewer: Bob Q

(u)   At this meeting, the occurrence of lung cancer and asbestosis in product users was discussed and the carcinogenic properties of all fiber types of asbestos was also discussed. In an affirmative attempt to mislead the public about the extent of health risks associated with asbestos, and in an effort to fraudulently conceal those risks from the public, these Defendants successfully conspired to prevent publication of the record of this 1952 Saranac Symposium. In addition, the conspirators induced Dr. Vorwald not to announce the results of his and Dr. Gardner's animal studies showing excess cancers in animals that thereby fraudulently misrepresented existing data, albeit secret, that could not be publicized because of the secrecy provisions contained in the 1936 Saranac Agreement required by the asbestos industry members.

(v)   The following conspirators were members of the Magnesia Insulation Manufacturers Association (MIMA): Phillip-Carey Corporation (predecessors to Celotex), Johns-Manville, and others.

(w)   In 1955, these conspirators caused to be published the "MIMA 85% Magnesia Insulation Manual." This manual falsely and fraudulently misrepresented that asbestos-containing products offered no hazard to workers who used these products.

(x)   The following conspirators were members of the trade organization known as the Asbestos Textile Institute (ATI): Raybestos-Manhattan, Johns-Manville, H.K. Porter, Keasby & Mattison (individually and through its alter-ego defendant Turner & Newall), defendant Asbestos Claims Management Corporation (f/k/a National Gypsum), and others.

d in Providence/Bristol County Superior Court
mitted: 11/12/2019 7:05 PM
relope: 2339616
iewer: Bob Q

(y)     In 1947, the members of the ATI received a report from W.C.L. Hemeon regarding

asbestosis that suggested re-evaluation of the then-existing TLVs for asbestos

exposure. These Defendants caused this report not to be published and thereby

fraudulently concealed material facts about asbestos exposure from the public and

affirmatively misrepresented to the public and class of persons exposed to asbestos

that the then-existing TLV was acceptable. Thereafter, these defendant

conspirators withheld additional material information on the dust standards from

The American Conference of Governmental Industrial Hygienists (ACGIH),

thereby further influencing evaluations of TLVs for asbestos exposure.

(z)     In 1953, defendant and conspirator Asbestos Claims Management Corporation

(f/k/a National Gypsum), through its agents, in response to an inquiry from the

Indiana Division of Industrial Hygiene regarding health hazards of asbestos spray

products, refused to mail a proposed response to that division indicating that

respirators should be worn by applicators of the products. National Gypsum's

response distorted and fraudulently misrepresented the need for applicators of

asbestos spray products to wear respirators and fraudulently concealed from such

applicators the need for respirators.

(aa)    In 1955, conspirator Johns-Manville through its agent Kenneth W. Smith, M.D.,

caused to be published in the AMA Archives of Industrial Health, an article entitled

"Pulmonary Disability in Asbestos Workers." This published study materially

altered the results of an earlier study in 1949 concerning the same set of workers.

This alteration of Dr. Smith's study constituted a fraudulent and material

misrepresentation about the extent of the risk associated with asbestos inhalation.

18

d in Providence Bristol County Superior Court
omitted: 11/12/2019 7:05 PM
velope: 2339616
/iewer: Bob Q

(bb)  In 1955, the National Cancer Institute held a meeting at which conspirators Johns-Manville (individually and as an agent for other alleged co-conspirators) and Dr. Vorwald (as an agent of co-conspirators) affirmatively misrepresented that there were no existing animal studies concerning the relationship between asbestos exposure and cancer, when, in fact, the conspirators secretly possessed several studies that demonstrated that positive evidence did exist.

(cc)  ·In 1957, members of the ATI jointly rejected a proposed research study on cancer and asbestos. This resulted in fraudulent concealment (from the public) of material facts regarding asbestos exposure and constituted an affirmative misrepresentation of the then-existing knowledge about asbestos exposure and lung cancer.

(dd)  In 1964, the members of the ATI met to formulate a plan for rebutting the association between lung cancer and asbestos exposure that had been recently discussed by Dr. Irving J. Selikoff. Thereafter, these members of the ATI embarked upon a campaign to further misrepresent the association between asbestos exposure and lung cancer.

(ee)  In 1970, through their agents, co-conspirators Celotex Corporation and Carey-Canada, affirmatively misrepresented that they had been in the asbestos business since 1918 and found no reported conditions of asbestosis or lung disease. This constituted a fraudulent misrepresentation about the material facts known to these conspirators.

(ff)  All conspirators approved and ratified and furthered the previous conspiratorial acts of conspirators Johns-Manville, Raybestos Manhattan, and Anthony J. Lanza, M.D., acting on behalf of defendant Met Life, and all alleged co-conspirators

19

d in Providence/Bristol County Superior Court
omitted: 11/12/2019 7:05 PM
relope: 2339616
iewer: Bob Q

during the relevant time period and circumstances alleged above, acted as agents

and co-conspirators for the other conspirators.

45.   All of the aforementioned Defendants:

(a)   did a tortious act in concert with the other or, pursuant to a common design, with

them;

(b)   knew that each other's conduct constituted a breach of duty and they each gave a

substantial assistance or encouragement to the other so to conduct himself; and/or

(c)   gave substantial assistance to the other in accomplishing a tortious result and its

own conduct, separately considered, constitutes a breach of duty to the Plaintiffs.

46.   The acts of the Defendants as described above, constitute a fraudulent concealment and/or

a fraudulent misrepresentation that proximately caused injury to the Plaintiffs in the

following manner:

(a)   The material published or caused to be published by the Defendants was false and

incomplete in that the Defendants knowingly and deliberately deleted references to

the known health hazards of asbestos and asbestos-containing products.

(b)   The Defendants individually, as members of a conspiracy, as agents of other co-

conspirators, and as aiders and abettors of each other intended that the publication

of false and misleading reports and/or the nondisclosure of documented reports of

the health hazards of asbestos:

i.   maintain a favorable atmosphere for the continued sale and distribution of

asbestos and asbestos-related products;

ii.   assist in the continued pecuniary gain of the Defendants through the sale of

their products;

d in Providence/Bristol County Superior Court
mitted: 11/12/2019 7:05 PM
elope: 2339616
iewer: Bob Q

      iii.   influence, in the Defendants' favor, proposed legislation to regulate asbestos exposure; and

      iv.   provide a defense in lawsuits and workers compensation claims brought for injury resulting from asbestos disease.

(c)     The Plaintiff reasonably relied upon the published medical and scientific data documenting the purported safety of asbestos and asbestos-containing products and the absence of published medical and scientific reports on the extent, nature, and existence of hazards of asbestos and asbestos-containing products to continue exposure to it because of a belief that it was safe.

(d)     The Defendants individually, as members of a conspiracy, and as agents of each other intended that Plaintiff rely upon the published report regarding the safety of asbestos and asbestos-containing products and, upon the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-containing products, continue Plaintiff's exposure to these products.

(e)     The Defendants individually, as members of a conspiracy, as agents of each other, and as aiders and abettors of each other are and were in a position of superior knowledge regarding the health hazards of asbestos and therefore Plaintiff had a right to rely on the published reports commissioned by the Defendants regarding the health hazards of asbestos and the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-containing products.

(f)     The Plaintiff suffered and will continue to suffer injury as a direct result and proximate result of the acts alleged herein. As a direct and proximate result of the acts of the Defendants, Plaintiff suffered serious bodily injury, requiring medical

21

d In Providence/Bristol County Superior Court
omitted: 11/12/2019 7:05 PM
elope: 2339616
iewer: Bob Q

monitoring; endured (and will continue to endure) great pain and suffering; incurred (and will continue to incur) medical expenses; suffered (and will continue to suffer) mental anguish, lost earnings and earning capacity; and Plaintiff was otherwise damaged.

(g) The Plaintiff will continue to suffer injury as a direct result and proximate result of the acts alleged herein. As a direct and proximate result of the acts of the Defendants, Plaintiff will continue to suffer serious bodily injury, endure great pain and suffering, incur medical expenses, require medical monitoring, suffer mental anguish, lose earnings and earning capacity, and otherwise be damaged.

## SIXTH COUNT
### (Loss of Consortium)

47. The Plaintiff, Roger Biagetti, husband of Plaintiff, Marilyn L. Biagetti, hereby repeats and restates all allegations contained in all paragraphs above as if fully set forth herein.

48. As a direct and proximate result of the foregoing acts of the Defendants, the Plaintiff's husband has suffered and will continue to suffer great pain and mental anguish by virtue of his loss of consortium with his wife and the loss of impairment of his wife's services, protection, care and assistance, loss of society, and other benefits of the marital relationship.

WHEREFORE, The Plaintiffs demand judgment and damages against the Defendants, jointly and severally, plus whatever other further relief this Honorable Court deems right and just, including but not limited to:

(a) $1,000,000 in compensatory damages;

(b) $1,000,000 in punitive damages;

(c) Exemplary damages, including attorneys' fees; and

(d) Interest and costs.

22

The Plaintiffs demand trial by jury.

Dated at Providence, Rhode Island, this the 8th day of November 2019.

<div style="margin-left: 50%;">

Respectfully Submitted,
THE PLAINTIFFS
By Their Attorney
/s/ John Deaton, Esq.
John Deaton, Esq. (RI Bar # 6537)
The Deaton Law Firm
450 North Broadway
East Providence, RI 02914
(401) 351-6400 phone
(401) 351-6401 fax
All-deaton@deatonlawfirm.com

</div>

ıd in Providence/Bristol County Superior Court
ɔmitted: 11/12/2019 7:05 PM
ıelope: 2339616
ıewer: Bob Q

## CERTIFICATION

    This is to certify that a true copy of the above document was served through the Rhode Island Judiciary Electronic Filing System this 12th day of November 2019.

/s/ Aislinn Partington
Aislinn Partington

24

STATE OF RHODE ISLAND                    SUPERIOR COURT
PROVIDENCE, SC.                          CIVIL ACTION NO.: 96-9999

IN RE ASBESTOS LITIGATION

## COURT-COUNSEL PROTOCOL REGARDING ASBESTOS LITIGATION

### I.     INTRODUCTION

Except as noted below, this Protocol shall apply to all pending and future cases in the

Rhode Island State Court Asbestos Personal Injury Litigation [1] hereinafter ("Asbestos

Litigation"). To the extent that the provisions of this Protocol are inconsistent with any prior

Orders of this Court, the provisions of this Protocol shall supersede inconsistent provisions of

prior orders.

This Protocol shall apply to all documents (including any exhibits or attachments to said

documents) that parties to the Asbestos Litigation are required by Rhode Island Rules of Civil

Procedure or any applicable Case Management Order to serve on counsel of record, except that it

shall not apply to service of summonses and complaints, which shall continue to be served

pursuant to Rule 5 of the Super.R.Civ.P. In addition, nothing in this Protocol shall have any

effect on the process by which documents are filed with the Court. The parties must continue to

file all documents in paper form with the Court according to the applicable

---

[1]   Individual Rhode Island Asbestos Litigation cases are designated as asbestos cases on the Superior Court Civil Case Cover Sheet.

1

Rules and Case Management Orders. This Protocol is not intended to affect the substantive

rights of any party with respect to any document.

## II.    ELECTRONIC SERVICE

1.    Rule 1 of the Super.R.Civ.P. provides that the rules of civil procedure "shall be construed to secure the just, speedy and inexpensive determination of every action."

2.    Rule 16 of the Super.R.Civ.P. provides that the court may in its discretion direct the attorney for the parties to appear before it to consider ". . . such other matters as may aid in the disposition of the action. Further, Rule 5(b)(2)(D) of the Super.R.Civ.P. (amended 2006) provides that service of pleadings and other papers may be made by delivering a copy by electronic means so long as the person upon whom service is being made has consented to such service in writing.

3.    The Court has pending before it at any given time dozens or even hundreds of active asbestos-related claims that have been assigned to the Honorable Alice B. Gibney. In these cases, one (1) of three (3) law firms[2] usually represents the plaintiffs and there are often many of the same defendants represented by many of the same defense counsel. Many of the pleadings, motions and discovery served in these cases are similar or identical in all the cases. Each case often involves the service of hundreds of such documents.

4.    Many of the parties in all the asbestos litigation assigned to this justice have been serving motions and discovery and amended pleadings upon each other by email and have found this to be a speedy and inexpensive method of service.

5.    Accordingly, except as set forth in Paragraphs 6 and 7 all documents (including exhibits or attachments to said documents) that parties to the asbestos litigation are required by the Rhode Island Rules of Civil Procedure and any applicable Case Management Order to serve on counsel of record, may be served electronically via Lexis-Nexis File & Serve ("Lexis"), in Portable Document Format (PDF) only, to all parties. This Protocol does not affect Rule 5(b)(2)(D)(3) (amended 2006) of Super.R.Civ.P. which provides that service by electronic means under Rule 5(b)(2)(D) is not effective if the party making service learns that the intended service did not reach the person to be served. Any document served electronically shall be otherwise identical to its appearance as filed with the Court, including the signatures of parties and counsel except as provided in Paragraph 17. Electronic service shall be deemed complete upon transmission unless the party making service learns that the

---

[2]    Early Ludwick & Sweeney, Motley Rice LLC, and The Deaton Law Firm.

attempted service did not reach the person to be served. If the document served electronically requires a response and none is received within the allotted time, prior to any default, deemed admissions or other adverse consequence to the failure to respond to discovery or pleading, the serving party shall give notice of non-response (including a copy of the earlier-served document) by e-mail and by hard copy (hard copy is defined herein as first class mail, overnight delivery, hand delivery or facsimile) to the non-responding party, who shall then have ten (10) days from receipt of the hard copy to respond before being held in default or being deemed to have admitted any matter or otherwise be subject to adverse consequences from the failure to respond. Any document transmitted via email shall certify in the Certificate of Service that a true and correct copy was electronically served to counsel of record via email list service.

6.  This Protocol does not affect the filing of papers with the Court and shall apply only to the service of documents. Original documents must still be filed as provided by Super.R.Civ.P. 5 or any other applicable provision of law.

7.  This Protocol does not affect the manner of service of summons and complaints and third-party complaints under Super.R.Civ.P. Rules 4 and 14. Further, this Protocol is not intended to pertain to the service of correspondence on any party other than correspondence directed to the Court. Any party at his or her option may utilize electronic service for the service of correspondence on any party. If a party elects not to use electronic service for the service of correspondence other than correspondence directed to the Court, he or she may utilize one or more of the following methods of service: first class mail, overnight delivery, express mail, hand delivery, facsimile, certified or registered mail, or email outside of electronic service contemplated in this Protocol.

8.  Except as provided in Paragraphs 6 and 7, all parties shall receive service solely by electronic means. Pursuant to Rule 5 (b)(2)(D), a signed Order Authorizing Electronic Service of Documents will constitute consent by all parties to the asbestos litigation.

III.   PROCESS FOR ELECTRONIC SERVICE OF DOCUMENTS

9.   LexisNexis File & Serve ("Lexis") shall make available to the Court (for the limited purpose of access to certain documents **not** for the purposes of filing) and to the parties in this litigation a system for providing electronic service, storage and delivery of documents ("the system").

10.   A party seeking to effectuate service of a document covered by this Protocol, shall send the document to Lexis by one of following three means of delivery:

    (a)   electronic transfer via the Internet to Lexis (the document being either a scanned executed document or a scanned image of a document);

    (b)   fax transmission; or

    (c)   via overnight mail or U.S. mail addressed to Lexis.

11.   The cost per transaction (documents including exhibits) for service via Lexis shall be $13.00 ("single transaction fee") if electronic transfer method is used. Lexis will charge an additional fee of $.30 per page if the document is faxed or mailed to Lexis for upload. Lexis shall collect the above-referenced fees in the form of an invoice sent to each firm on a monthly basis.

12.   A "transaction" is: (a) the uploading/service of document(s) and any related exhibits and attachments to the document(s) of any aggregate length in any single case; or (b) the uploading/service of document(s) and any related exhibits and attachments to the document(s) of any aggregate length in multiple cases. A multiple case service option will be available to parties for a single transaction fee, which will allow a party to add multiple captions to one single transaction for the uploading/service of document(s) and any related exhibits and attachments to the document(s).

13.   Regardless of transmission method, all document service must be initiated on the website by a registered user. Lexis shall then convert all documents into Adobe Portable Document Format (pdf) and make them available to parties on an Internet website maintained by Lexis ("the Website").

14.   Lexis shall post all documents to the Website according to the following timetable:

    (a)   Electronic documents shall be posted to the Website within one (1) hour of receipt of such document from a registered user;

    (b)   Faxed documents shall be posted to the Website within six (6) business hours of receipt from a registered user; and

(c)   Mailed paper copy documents shall be posted to the Website within twenty-four (24) hours of receipt of the overnight mail package.

15.   Loss of internet connectivity on the part of a user shall not extend any service or filing deadlines except as provided in the paragraph. For any day or partial day that the Lexis system is out of service, deadlines applicable to service of documents pursuant to this Protocol shall be extended by one full business day. Where the occurrence of an event causes a loss of a user's internet connectivity or causes an inability to access the Lexis system, that user may serve opposing counsel and liaison counsel by email (outside of electronic service contemplated in this Protocol) or by "hard copy" (see paragraph 5), and upload the document to the Lexis system once internet connectivity is reestablished. Moreover, in the event that the Lexis system service is not functioning for more than one day, a party may serve opposing counsel and liaison counsel by email (outside of electronic service contemplated in this Protocol) or by "hard copy" (see paragraph 5) and then through the Lexis service once such service is functioning.

16.   Lexis shall maintain a "Single Case" docket for service in an individual case, and an "All Cases Docket" (also known as "In Re: Asbestos Litigation Docket," Docket No.: 96-9999) for documents filed on the Rhode Island Asbestos Litigation Consolidated Docket. Case-specific documents shall be posted to the "Single Case" docket, not the "All Cases Docket."

17.   Documents posted on Lexis need not contain visual representations of the filing attorneys' signatures. Where it is not possible for the attorney to insert an original signature, attorneys shall (in place of a signature and where the signature would normally appear) place the following declaration: "Original Signature on File." Original documents filed with the Court must contain original signatures in conformance with the Rhode Island Rules of Civil Procedure.

18.   Access to the Lexis system shall be limited to registered users. Registered users shall consist of Court personnel as authorized by the Justice responsible for such asbestos litigation and counsel of record or their designees within their law firms. Lexis shall provide each registered user with a username and password to access the system. Lexis personnel shall perform all administrative functions for the system, except that registered users may use the "Case Management" function to adjust their mappings (i.e. add or delete registered users who receive electronic notification in any given case).

19.   Any document electronically served pursuant to this Protocol shall be deemed served as of the date and time it is transmitted to Lexis. Any document transmitted to the system shall certify in the Certificate of Service that a true and correct copy was electronically served to counsel of record via Lexis. A

5

document is deemed to have been served via the Lexis system on a given date so long as it is served via the Lexis system no later than 11:59 p.m. Eastern Time on such date. Documents served via the Lexis system after 11:59 p.m. Eastern Time on a given date will be deemed served the next business date.

20. Instructions for use of the Lexis system shall be posted on the Lexis Main Menu, which is displayed each time a user logs onto Lexis.

21. Unless ordered by the Court, no documents that are filed under seal ("sealed documents") shall be served via the system. Rather, service of sealed documents shall be made pursuant to Rule 3.3 of the Superior Court Rules of Procedure.

## IV. ADDITION OF NEW CASES OR NEW PARTIES TO THE SYSTEM/ RESPONSIBILITIES OF PARTIES

### Plaintiffs' counsel responsibilities:

22. For each new case filed on or after this Protocol, Plaintiffs' counsel shall, within forty-eight (48) hours of filing the complaint; (a) contact Lexis to initiate the electronic case docket or initiate it directly on the system, and (b) contact Lexis to map to the case docket all defendants (who have a registered user) named in the case.

### Defense counsel responsibilities:

23. Defense counsel must designate one user within their law firm who will be responsible for receiving service on behalf of their defendant. It shall be responsibility of each individual defense counsel/firm to map any additional users whom they wish to receive service for any defendant(s) by utilizing the Case Management functions on the Lexis system. See also Paragraph 24 regarding the addition of new parties. Once an additional user is mapped to a defendant, that user will be automatically mapped to every existing or new case in which that defendant is named.

### Joint plaintiffs' counsel/defense counsel responsibilities:

24. When a party serves a motion or pleading seeking to add new parties to a case, the serving party shall, within forty-eight (48) hours of serving the motion or pleading, request that Lexis map to the case docket all parties (who have a registered user) sought to be added. If a party sought to be added does not have a registered user, the moving party shall serve the motion pursuant to Rule 5 of the Super.R.Civ.P.

25.   When a new party to the asbestos litigation is named or added in a case, the party seeking to name or add the new party shall serve a copy of this Protocol upon the new party simultaneously. New parties that are not added to a case by an existing party, will be provided with a copy of this Protocol by Defendants' liaison counsel after counsel for such party has entered an appearance in the case. All new parties shall, within twenty (20) days of receipt of service of this Protocol, contact Defendants' liaison counsel to provide the appropriate contact information and to designate registered users to receive service on behalf of the new defendant for the service. All subsequent service to that party shall be made electronically in accordance with the provisions above, except as otherwise stated in paragraphs 6 and 7.

## V.   IMPLEMENTATION OF LEXIS NEXIS

26.   Implementation of the Lexis system shall take place forty-five (45) days within the Court's execution of this Protocol.

BY ORDER:

Deuse M Gulf
Deputy Clerk

ENTER:

DATE:

1/9/08

7

SUBMITTED BY:

Stephen T. Armato #6395
Cetrulo & Capone LLP
321 South Main Street
Providence, RI 02903
Telephone: 401-274-7850
Facsimile: 401-224-9670

Jennifer A. Whelan #6952
McGivney & Kluger, P.C.
72 Pine Street
Providence, RI 02903
Telephone: 401-272-5300
Facsimile: 401-331-7454

8

721397v1